United States District Court
Southern District of Texas
ENTERED

JUL 2 9 2009

Clerk of Court

OPINION

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF THE COMPLAINT OF: | § § § | CIVIL ACTION: NO. 1:08-CV-00410 |
| CARMELITA, INC., OWNER OF THE VESSEL "CARMELITA," AND INDIVIDUALS: GREG LONDRIE; HARLEY LONDRIE; LINDA LONDRIE; PATRICIA ZIMMERMAN; CECIL MOSES; HAMPTON KEATHLEY IV; SUSAN DELAFIELD; AND ZIMCO MARINE, INC. | § § § § § § § § § § | In Admiralty Pursuant to Rule 9(h) Of the Federal Rules of Civil Procedure. |

## DECREE ON PETITIONERS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

Before the Court is Petitioners' Motion for Partial Judgment on the Pleadings. (Docket No. 56). Additionally before the Court is Claimants' Initial Response to Petitioners' Judgment on the Pleadings (Docket No. 61), and Petitioners' Response to Claimants' Initial Response. (Docket No. 69). Petitioners' Motion for Judgment on the Pleadings is GRANTED in part and DENIED in part as follows.

## BACKGROUND

Dorn Edward Williams ("Dorn Edward"), a fisherman by trade, was gainfully employed aboard the M/V Carmelita, a shrimping vessel, when it departed from Port Isabel, Texas on June 5, 2008 on a shrimping expedition. On June 14, 2008, Dorn Edward was discovered missing from the M/V Carmelita.

The M/V Carmelita, like many of the vessels within the jurisdiction of the Court, is engaged in the shrimping industry. The M/V Carmelita is the sole asset of Carmelita Incorporated. Additionally, the M/V Carmelita is part of a fleet of shrimping vessels commonly referred to as the Cruz fleet.[1] Although usually operated and referred to as the Cruz fleet, each individual vessel is owned by a separate corporation. And each of those corporations owns but one shrimping vessel.

All of the boat-owning corporations that collectively are known as the Cruz fleet are in turn owned entirely by Nevgulmarco Incorporated. Nevgulmarco Inc., is in turn owned by Texgulmarco Incorporated.[2] Texgulmarco's officers include Harley and Greg Londrie, who are father and son, respectively. Harley Londrie was elected officer by the shareholders of Carmelita Inc., Nevgulmarco Inc., and Texgulmarco Inc. Harley Londrie is the official with the highest decision-making authority in all three corporations, and regularly exercises control on a day-to-day basis over all three corporations. Greg Londrie admits that, although he is also a corporate officer and is the only officer with a business college degree, it is his father, Harley Londrie who wields the highest decision-making authority in all of the above-mentioned corporations. Greg Londrie is not compensated for being an officer.

Harley and Greg Londrie, as officers of Texgulmarco Inc., allow the employees of affiliates Zimco Inc., Texas Gulf Trawling Inc., and Nevgulmarco Inc. to commingle employees when it

---

[1] The Cruz fleet is so referred to because most of the names within the fleet contain the word "Cruz" in their names: Arroyo Cruz, Blanca Cruz, Brava Cruz, Salina Cruz, Terceda Cruz, Dorado Cruz, Fiesta Cruz, Gloria Cruz, Hermosa Cruz, Madera Cruz, and Oceanica Cruz. All of these vessels are painted orange, black, and white.

[2] Texgulmarco Incorporated also owns Zimco Incorporated and Texas Gulf Trawling Incorporated. Zimco Inc., provides maintenance for the Cruz fleet and Texas Gulf Trawling Inc., is the depositary where the Cruz fleet unloads its shrimp loads.

comes to: unloading shrimp loads at Texas Gulf; performing maintenance on the shrimping vessels at Zimco; and also routinely switch captains and crews amongst the vessels owned by the corporations that in turn are owned by Nevgulmarco Inc. Whether the individual vessels are insured by third parties or self-insured is a decision left to Harley Londrie's discretion.

The same accounting firm, Long and Chilton, is used by all of the above-mentioned corporate entities. Moreover, the same business address is used by a majority of the above-mentioned corporations, and Texgulmarco admits –through the testimony of its officers– that the company engages in discriminate pricing depending on whether the corporation that is being dealt with is an affiliate. Texgulmarco Incorporated is owned by Walter and Patricia Zimmerman, Linda Londrie, Dede Baum, Susan Delafield and Lori Hampton.[3]

Maria de la Luz and Roberto Williams, Dorn Edward's parents, believe that Dorn Edward died on the high seas and have filed a wrongful death action in Texas state court. Dorn Edward's daughter, Aileen Williams, appears in that action as she does here, through her next friend Aurora Medrano.

The defendants in that action, the petitioners here, filed an Action Brought for Exoneration From or Limitation of Liability with the Court pursuant to 46 App. U.S.C. § 181-189; 46 U.S.C. § 190-196 on August 26, 2008. Maria de la Luz and Roberto Williams intervened, along with Aileen Williams through her next friend Aurora Medrano, as claimants in their personal and official capacities as representatives of the Dorn Edward's estate on September 10, 2008.

---

[3]Walter and Patricia Zimmerman are parents to Linda Londrie, Dede Baum, Susan Delafield, and Lori Hamption. Linda Londrie is Harley Londrie's wife and Greg Londrie's mother.

Petitioners objected to Maria de la Luz and Roberto Williams's capacity to file suit on behalf of the estate on September 22, 2008. The Court agreed with Petitioners and struck all pleadings, representations, and claims made in a representative capacity by those claimants until Maria de la Luz was able to satisfy the Court of her capacity to sue on the decedent's estate behalf.

All parties signed a Consent To Proceed Before Magistrate Judge on October 7, 2008. (Docket No. 8). On June 9, 2009, Petitioners filed a Motion for Partial Judgment on the Pleadings. (Docket No. 56). On June 29, 2009, Claimants filed a Response to Motion for Partial Summary Judgment. (Docket No. 61). On July 14, 2009, Petitioners filed a Reply to Response to Motion for Partial Summary Judgment. (Docket No. 69). The Court ordered a hearing for July 20, 2009, to better develop the record and to allow both litigants the opportunity to argue the merits of their respective motions.

## CONSTRUCTION OF THE PLEADINGS

Petitioners filed a Motion for Partial Judgment on the Pleadings, as previously stated, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Claimants responded by filing a Fed. R. Civ. Pro. 56 answer with sworn affidavits relating to matters outside the pleadings as though Petitioners' Motion for Partial Judgment on the Pleadings was a Motion for Summary Judgment. Petitioners, in their response to Claimants' response, object that Claimants "fail to point out matters outside the pleadings which require thier motion to be treated as one for summary judgment," and, "the standard set out in Claimants' response does not apply to Petitioners' Rule 12(c) Motion." Reply to Resp. Pet'rs.' Mot. Partial J. (Docket No. 69). It is therefore necessary for the Court to resolve any procedural issues before addressing Petitioners' motion and response and Claimants' response.

4

Motions filed under Fed. R. Civ. Pro. 12(b)(6) and 12(c) are designed to test the sufficiency of the pleadings, and courts do not consider materials outside of those pleadings in deciding those motions. In situations where the court is presented with materials outside the pleadings in response to a 12(b)(6) or 12(c) filing, and those materials are not rejected by the court, the 12(b)(6) or 12(c) motion must be converted to one for Summary Judgment pursuant to Rule 12(d) and Rule 56(c) of the Federal Rules of Civil Procedure. In so doing, the Court must afford the parties an opportunity to present all materials pertaining to such a motion.

Therefore, the Court accepts the matters outside the pleadings submitted by Claimants in their Response to Motion for Partial Summary Judgment filed on June 29, 2009. Further, the Court offered to give Petitioners a reasonable opportunity to submit affidavits and extraneous proofs to avoid taking Petitioners by surprise through the conversion of the Rule 12(c) motion into a motion for summary judgment on July 20, 2009. The petitioners indicated that no such leave was necessary as the only supplemental matter outside the pleadings they would file, a 2003 income tax return, had already been submitted earlier in the hearing. Mot. Hr'g Tr. at 50 (Docket No. 71)

## SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, the discovery, disclosed materials on file, and any affidavits show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c). A fact is material when it might affect the outcome of a suit under governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). While the moving party is responsible for showing that no dispute of material fact exists, the nonmoving party must set out specific facts showing a genuine issue for trial and may not rely merely on allegations or denials in its own pleading. FED. R. CIV. P. 56(e). There must be

evidence on which the jury could reasonably find for the nonmovant when denying movant's motion for summary judgment

If a nonmoving party fails to make a showing sufficient to establish an element essential to the party's case that the party has a burden of proof at trial, summary judgment must be granted because there is no genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The failure of proof concerning an essential element of the nonmoving party's cases renders all other facts immaterial. Id. at 322-23.

Additionally when determining whether to grant summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255.

## THE MERITS

Petitioners' motion centers around two key claims: (1) that Aileen Williams has not established that she is the decedent's biological daughter and thus should be dismissed from the case; (2) that all Petitioners, except for Carmelita Inc., should be dismissed as they are shielded from liability by corporate structures notwithstanding the corporate common law doctrines of alter ego and single business enterprise.

### I.  Aileen Williams's Parentage Is An Issue of Material Fact

There must be evidence on which the jury could reasonably find for the nonmovant when denying movant's motion for summary judgment. Petitioners begin their Motion by stating, "Claimant Aurora Medrano does not make an affirmative unequivocal allegation that Aileen Williams is the biological child of Dorn Edward Williams but merely alleges that the said Aileen

6

Williams has suffered from the death of her unnamed father," and that "Aileeen Williams merely claims that Dorn Edward Williams was present during the birth of Aileen Williams and signed an undisclosed paper as her father." Pet'rs.' Mot. at 2 (Docket No. 56).

A review of all the instruments before the Court evinces more. In the Proof of Claim for example, the Claimants state, "Claimant Aileen Williams has suffered from the death of her father." Proof of Claim at 10 (Docket No. 7). The paragraph before this quote discusses the death of the decedent involved in this case, and the sentence afterward begins with "[t]his accident has caused [Aileen Williams] to lose the services, advice, counsel, and contributions . . . [sic] have received from her father during his lifetime had he lived." *Id.* Petitioners claim that one cannot glean from those claims who exactly Aileen claims to be her father.

A few paragraphs later Claimants again allege, "As a result of Dorn Edward Williams' death, Maria de la Luz Williams and Roberto Williams [sic] Individually, parents, and Aileen Williams, surviving child, have suffered damages . . ." Proof of Claim at 11 (Docket No. 7). The amended proof of claim states the same facts. Further, in their Initial Response to Petitioners' Motion For Partial Judgment on the Pleadings, Claimants respond that, "Claimants have provided that Aileen Williams is the natural child of Dorn Williams and thus entitled to bring claims against [sic] petitioners for her damages arising from the untimely death of her father." Claimants' Resp. to Mot. Partial J. at 2 (Docket No. 61). Claimants further state, "there is a question of fact raised by the official birth certificate identifying Dorn Williams as the natural father of Aileen Williams." *Id.*

Therefore, taking into consideration the entire record as it stands before the Court, a genuine issue of material fact exists as to whether Aileen Williams is the decedent's daughter.[4] It is a question of fact because reasonable men may differ as to whether, based on the current evidence, Aileen Williams is the decedent's daughter. *Gaspirini v. Center for Humanities, Inc.*, 518 U.S. 415, 434 (1996). Additionally, as the petitioners admit, it is material because it will affect Aileen Williams's ability to recover for the decedent's death. The quotations above evince the genuineness of the issue as to whether Aileen Williams is the decedent's daughter. The existence of a genuine issue of material fact precludes the entry of an order for summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To the extent that Petitioners sought to remove Aileen Williams based on her questionable, though not determined parentage, that request is denied because there is a genuine issue of material fact as to her parentage.

## II.    The Alter Ego Claim

When "a corporation is organized and operated as a mere tool or business conduit of another," the alter-ego theory provides a basis on which to disregard the corporate fiction." *Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex. 1986), *superceded by statute*, *Western Horizontal Drilling,*

---

[4]Additionally, even if the Court had rejected the matters outside the pleadings presented by Claimants in their response to Petitioners' 12(c) motion, a motion to dismiss would have been just as unsuccessful. Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contained a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009)(citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Rule requires sufficient factual matter, which accepted as true, states a claim to relief that is plausible on its face." *Id.* at 1941. A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Here there is more than the "threadbare recitals of a cause of action's elements" disapproved of in *Twombly*. Moreover, the Court drawing on its experience and common sense finds that the claim that Aileen Williams is the decedent's daughter is plausible on its face. These two findings are the essence of what *Twombly* and *Igbal* demand of a pleading. Thus, even if characterized as a motion to dismiss, instead of a motion for summary judgment, the outcome remains the same.

8

*Inc., v. Jonnet Energy Corp.*, 11 F.3d 65, 68 (5th Cir. 1994). The alter-ego theory applies when the corporation and individual are so unified that separateness of the corporation ceases. *Id.* (*citing First Nat'l Bank v. Gamble*, 134 Tex. 112, 132 S.W.2d 100, 103 (Tex. 1939)). A successful alter ego claim requires a showing of the "total dealings of the corporation and the individual, including the degree to which ... corporate and individual property have been kept separately, the amount of financial interest, ownership and control the individual maintains over the corporation, and whether the corporation has been used for personal purposes." *Howell*, 84 S.W.3d at 714 (quoting *Castleberry*, 721 S.W.2d at 272).

Claimants assert that: (1) that all boats, which are individual corporations, have the same color scheme; (2) all the corporations use the same accounting firm; (3) file joint consolidated returns together; (4) intermingle employees; (5) and each corporation owns one shrimp boat.

The common law doctrine of alter ego permits a court to disregard the separate identities of legal corporations in order to prevent the defeat of public convenience, wrongs, fraud, and crimes or in other exceptional situations. *See Bell Oil & Gas Co. v. Allied Chemical Corp.*, 431 S.W.2d 336, 339 (Tex.1968); *Drye v. Eagle Rock Ranch, Inc.*, 364 S.W.2d 196, 202 (Tex. 1962).

Nevertheless, the relevant Texas statute is clear, "[T]he ... owner ... caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the ... owner. ..." TEX. BUS. CORP. ACT. ANN. art 2.21(A)(2) (2003).

Actual fraud for the purposes of the Texas Business Corporation Code § 21.223 is conduct that involves dishonesty of purpose or intent to deceive. *Lincoln General Ins. v. U.S. Auto Ins. Services*, 2009 WL 117464, at *5 (N.D. Tex. April 29, 2009). Further Rule 9(b) of the Federal Rules of Civil

Procedure requires Claimants to allege with specificity the time, place and contents of the false representations, as well as the identity of the person making the representation and what the person obtained thereby. *Williams v. WMX Tech, Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). The claimant must plead "enough facts to state a claim to relief that is plausible on its face." *Guidry v. American Public Life Insurance Co.*, 512 F.3d 177, 180 (5th Cir. 2007)(citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007)).

The Court specifically and unequivocally asked Claimants "where is the fraud?" Mot. Hr'g Tr. at 43 (Docket No. 71). Claimants responded, "the criteria for piercing the veil are evidence that the corporate entity, the way it was operated, amounts to a fraud, promotes an injustice, or is relied upon to justify a wrong." *Id.* Claimants were unable to unequivocally state with any particularity what actual fraud the Petitioners perpetuated on them. *Id.* The failure to argue actual fraud is fatal to any claim of alter-ego. *SSP Partners v. Gladstone Investments*, 275 S.W.3d 444, 455 (Tex. 2008). Summary judgment as to this issue, is appropriate given that no genuine issue of material fact exists.

### III. The Single Business Enterprise Claim

The common law doctrine of single business enterprise is not a cause of action, but rather a theory for imposing liability where two or more business entities act as one. *Academy of Skills and Knowledge Inc., v. Charter Schools, USA, Inc.*, 260 S.W.3d, 529 (Tex. App.-Tyler 2008). Although the alter ego doctrine and the single business enterprise doctrine are both based on principles of equity, an important distinction is that the alter ego doctrine generally involves proof of fraud. *Id.*

Common law factors to be considered in determining whether corporations operate as a single business enterprise include, but are not limited to, the following: (1) common employees; (2) common offices; (3) centralized accounting; (4) payment of wages by one corporation to another corporation's

10

employees; (5) common business name; (6) services rendered by the employees of one corporation on behalf of another corporation; (7) undocumented transfers of funds between corporations; and (8) unclear allocation of profits and losses between corporations. *Paramount Petroleum Corp. v. Taylor Rental Center*, 712 S.W.2d 534, 536 (Tex. App. -Houston [14th Dist.] 1986, writ ref'd n.r.e.), *overruled by*, *SSP Partners v. Gladstone Investments*, 275 S.W.3d 444, 455 (Tex. 2008)

However, at present, Texas does not recognize the common law doctrine of single business enterprise. *SSP Partners*, 275 S.W.3d at 455. Therefore to the extent that claimants rely on that doctrine to pierce the corporate veil, those claims must fail as a matter of law and no question remains for the jury. Summary judgment as to this issue, is appropriate.

## CONCLUSION

In light of the above it is the order of the Court that:

(1) Petitioners: Greg Londrie, Harley Londrie, Linda Londrie, Patricia Zimmerman, Walter Zimmerman, Cecil Moses, Hampton Keathley IV, Susan Delafield, and Zimco Marine Incorporated are not liable to Claimants under the theories of single business enterprise or alter ego and is therefore dismissed from liability arising from those claims. There being no other claims against Zimco Marine Inc, it is dismissed from this action.

(2) Claimant Aileen Williams, through her Next Friend Aurora Medrano, remains a party in this case.

It is so ORDERED and SIGNED this 29th day of July 2009, at Brownsville, Texas

                                                            Felix Recio
                                                            United States Magistrate Judge